UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
Eastern Division

| | | |
|---|---|---|
| In Re: | ) | Case No. 21-13127 |
| | ) | |
| Latonya Walls | ) | Chapter 13 |
| | ) | |
| Debtor. | ) | |
| | ) | |
| | ) | Honorable Jacqueline P. Cox |

**Opinion on Motion for Relief From Stay, Amended Motion for Turn Over and Sanctions, and Response to Amended Motion (Dkts. 16, 21, 22)**

This matter comes before the court on Pronto Finance, Inc.'s ("Secured Creditor's") Motion for Relief From Stay, Leave to Sell Repossessed Vehicle, and Turnover of Keys to Vehicle (Dkt. 16) ("Motion for Relief From Stay"), Debtor's Amended Motion for Turn Over and Sanctions (Dkt. 21) ("Turnover Motion"), and Secured Creditor's Response to the Turnover Motion (Dkt. 22).

For the reasons discussed herein, Pronto Finance, Inc.'s Motion for Relief From Stay (Dkt. 16) is denied for the reasons discussed herein. Debtor's Motion for Turnover and Sanctions (Dkt. 21) is granted in part, and Pronto Finance, Inc. must return the vehicle (VIN # WDDSJ4EB7EN131210) to the Debtor. However, Debtor's request for sanctions and for a finding of contempt is denied.

**Background**

These matters all concern the proper treatment of a 2014 Mercedes Benz CLA 250 (VIN # WDDSJ4EB7EN131210) that was repossessed pre-petition twice, once before Debtor's prior Chapter 7 case and again before the instant Chapter 13 case. Debtor had purchased the vehicle pre-petition after entering into a motor vehicle retail installment contract with Pronto Finance, Inc. The

1

contract required, *inter alia*, that Debtor maintain full insurance for the vehicle, and gave Pronto

Finance the right to repossession upon a default.   (Dkt. 16, Ex. D).

**Motion for Relief from Stay**

In their Motion for Relief from Stay and Response to the Turnover Motion, the Secured

Creditor alleged that, among other things, at the time the vehicle was repossessed, the Debtor had

used license plates of another vehicle on her vehicle, which were not registered to Debtor's vehicle

(Dkt. 16, p. 6; Dkt. 22, p. 4); had hired persons to remove the GPS (Dkt. 16, Ex. G; Dkt. 22, p. 4);

and that the Debtor currently did not have adequate vehicle insurance coverage (Dkt. 16, Ex. I; Dkt.

).

In its Amended Motion (Dkt. 21), the Debtor argued that it had provided proof that the

vehicle is fully insured (Dkt. 21, ¶ 9) and disputed the other allegations.

On Monday, December 6, 2021, after due notice given, an evidentiary hearing was held on

the issues of whether Debtor had car insurance, whether Debtor had placed fake license plates on the

vehicle, and whether the GPS on Debtor's vehicle was being removed by Debtor's mechanics at the

time of repossession.

At the hearing, the Secured Creditor's Attorney, Ms. Elizabeth S. Gabis, made a correction

to her motion.  Her motion alleged that the license plates on Debtor's vehicle belonged to another

vehicle (Dkt. 16, p. 6), but in reality the plates were issued to the same vehicle.   At the hearing,

testimony was given by the Debtor and the Secured Creditor's repossession agent, Chris Ryan (see

Dkt. 16, Ex. G).  The Debtor testified that at the time of repossession, she had hired her uncle, a

mechanic, to fix the gas can, but did not attempt to remove the GPS or hire anyone to do so. Mr.

Ryan testified that when he came to repossess the vehicle, two men who had the vehicle up on jacks

told him that the Debtor had hired them to remove the GPS. However, Mr. Ryan also testified that he found the vehicle using its GPS and did not see them remove the GPS or know where it was located on the vehicle.

Lastly, there was muddled and confusing testimony given surrounding the status of the vehicle's insurance. The Debtor testified that she had vehicle insurance. The Debtor's attorney represented that the Debtor and that the Secretary of State confirmed that the Debtor had insurance that met the minimum coverage requirements of the State of Illinois. He also stated that he had provided the Secured Creditor with a copy of the policy.

The Trustee, Mark Wheeler, also testified as a witness. He had examined the policy and testified that under Debtor's vehicle insurance, the lienholder, Pronto Finance, is also insured; that the policy had a $500 deductible; and that there was an exclusion to the policy, but that it was unclear what the exclusion meant.

Hence, the testimony at the December 6, 2021 hearing reveals that Secured Creditor had little support for the allegations their Motion for Relief from Stay regarding the used license plates, removal of the GPS, and lack of insurance. The Secured Creditor's attorney stated that the plates were Debtor's and that they Debtor had been given new plates after her license was reissued. Their repossession agent, Mr. Ryan, testified that he did not actually see anyone removing the GPS from the vehicle and was able to locate it using its GPS, suggesting it had been working. Lastly, the Debtor and the Trustee's testimony regarding her vehicle insurance indicate that the Debtor has full coverage insurance. However, some of the testimony about the insurance is unclear, as the Trustee testified that Pronto Finance, Inc. was also covered, but there was an exclusion to the policy with unknown effect. As a result, lifting the stay is not warranted at this time.

3

**Turnover Motion**

The Debtor's Turnover Motion (Dkt. 21) is granted in part, such that the vehicle must be returned. However, Debtor's requests for sanctions and a finding of contempt are denied.

The Debtor's motion argues that under 11 U.S.C. § 542(a), the Secured Creditor is required to turn over the vehicle (Dkt. 21, ¶ 14). Section 542(a) requires a creditor to "[i]mmediately return a seized asset in which a debtor has an equity interest to the debtor's estate. . . ."

Although turnover is mandatory under 542(a), both parties failed to acknowledge that here, 11 U.S.C. § 543 likely applies. This is because Pronto Finance, Inc. is likely a "custodian" under 11 U.S.C. § 101(11)(C), since the contract authorizes them to take the vehicle "[f]or the purpose of enforcing a lien against such property." Under § 543(d)(1), the bankruptcy court may excuse a creditor from their turnover obligation when doing so would be "in the interests of creditors." However, the court declines to find that excusing Pronto Finance, Inc. from its turnover obligation is appropriate at this time.

The court also finds that issuance of sanctions and a finding of contempt are inappropriate here because there is nothing that suggests that Pronto Finance, Inc. acted in bad faith.

**Dated**: December 7, 2021

**Enter**: J. P. Cox

Honorable Jacqueline P. Cox

United States Bankruptcy Judge

4